IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
UNITED STATES OF AMERICA,      )
                               )
        v.                     )      1:02cr165-1
                               )
TRACY CALVIN DUNLAP, JR.       )
```

### MEMORANDUM ORDER

Following a jury trial, Defendant Tracy Calvin Dunlap was sentenced to 324 months imprisonment upon conviction of mail fraud, wire and radio fraud, transportation of fraudulent securities, fraudulent interstate transactions, and engaging in monetary transactions in property derived from wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. § 2314, 15 U.S.C. § 77q(a) and 77x, and 18 U.S.C. § 1957(a) and (b). (Doc. 85.) Dunlap has been in custody since May 23, 2003. (Doc. 159 at 2.)

Dunlap, who is detained at the Bureau of Prisons ("BOP") Federal Correctional Complex in Butner, North Carolina, now moves for compassionate release with a reduction of his sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] (Doc. 152.) In support of his motion, he argues that the combination of his age and medical conditions, alongside the confirmed presence of the novel coronavirus (known as COVID-19) at Butner, are extraordinary and compelling reasons that warrant his immediate

---

[1] Dunlap also moves to seal certain records filed in connection with his motion. (Doc. 155.)

release. (Id. at 1-2.) The Government opposes Dunlap's immediate release, contending that his circumstances are neither extraordinary nor compelling. (Doc. 161 at 15.)

While federal courts have long been authorized "to reduce the sentences of federal prisoners facing extraordinary health conditions," United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019), the First Step Act of 2018 added a provision to 18 U.S.C. § 3582(c)(1) that enables defendants to move for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once this exhaustion requirement is met, a defendant moving for release under § 3582(c)(1)(A)(i) must show that there are "extraordinary and compelling reasons" that warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." (Id.) A court considering a reduction in sentence pursuant to § 3582(c)(1)(A) must also consult the sentencing factors set forth in 18 U.S.C. § 3553(a). (Id.)

The parties agree that Dunlap has exhausted his administrative right to appeal. (Docs. 159 at 6; 161 at 11.)

2

Beyond a consideration of the § 3553(a) factors, the remaining issues before the court are first, whether there are extraordinary and compelling reasons that warrant a sentence reduction; and second, whether such a reduction is consistent with applicable policy statements from the United States Sentencing Commission.

United States Sentencing Guideline § 1B1.13 is the applicable policy statement related to compassionate release.[2] Section 1B1.13 essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); see also Beck, 2019 WL 2716505, at *4. The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release, including the medical conditions, age, and family circumstances of the defendant. U.S.S.G. § 1B1.13 cmt. n.1-3.

Dunlap argues that his circumstances create an extraordinary and compelling reason to reduce his sentence. At 77 years old, Dunlap's health is deteriorating. He has been diagnosed with

---

[2] The United States Sentencing Commission has not updated its policy statements on compassionate release since the First Step Act was signed into law in December 2018. Beck, 2019 WL 2716505, at *5 n.7. Thus, the current phrasing of § 1B1.13 addresses scenarios in which the BOP Director files a motion for compassionate release, but not situations in which an inmate files a similar motion under § 3582. As such, § 1B1.13 provides helpful guidance when considering a motion filed by an inmate, but "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." Id. at *6.

hypertension, severe thyroid problems, arthritis, acute nerve pain, muscle wasting and atrophy, as well as a bladder disorder. (Doc. 159 at 3.)  His deteriorating health also "required him to undergo back surgery in 2015, a knee replacement in 2019, and a cataract extraction procedure in 2019."  (Id.)  He is no longer able to walk without the assistance of a walker.  (Id. at 19.)  He further argues that the presence of COVID-19 at Butner and the vulnerabilities of prison populations to the spread of the virus put him at a unique risk of contracting COVID-19, given his advanced age and health.  (Id. at 11-14.)

The Government responds that the presence of COVID-19 on its own does not amount to an extraordinary or compelling reason to reduce a sentence, but it concedes that "[i]f an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons.'"  (Doc. 161 at 13-14.)  The Government's primary objections to Dunlap's motion are that his physical ailments do not amount to a serious deterioration of his physical health and that Dunlap has "failed to demonstrate how BOP's procedures to safeguard his health . . . have exposed him to greater risk."  (Id. at 16.)

While it is true that the presence of COVID-19 alone does not create extraordinary and compelling reasons for release, and this

4

and other courts have rejected other requests for compassionate release for that reason, the court must consider each case based on the individual inmate and his or her specific circumstances. Here, Dunlap, who was 59 years old at his sentencing, is 77 years old and has thus served 18 years -- approximately 66% -- of his sentence. His health is deteriorating. Most importantly for the present motion, foremost among his various medical ailments is hypertension which, as the Government acknowledges, has been identified as a common, significant comorbidity of COVID-19, increasing his vulnerability of suffering severe illness and death. (Doc. 161 at 14 n.4 and accompanying text.) See <u>Coronavirus Disease 2019: Older Adults</u>, Centers for Disease Control and Prevention, (Apr. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html (CDC noting that COVID-19 is especially dangerous for both the elderly and those with severe chronic medical conditions, including hypertension, and that 8 of 10 COVID-19 deaths reported in the United States have been in older adults); <u>Coronavirus Disease 2019: COVID-19 and Underlying Conditions</u>, Centers for Disease Control and Prevention, (April 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (noting that those with certain serious health conditions, including hypertension, are especially vulnerable to and at higher risk for serious complications from COVID-19,

5

including death); Ernesto L. Schiffrin et al., Hypertension and COVID-19, 33 Am. J. Hypertension 373 (Apr. 6, 2020), https://academic.oup.com/ajh/article/doi/10.1093/ajh/hpaa057/5816609 (identifying hypertension as the most common comorbidity for COVID-19). See also United States v. Sanchez, 18-cr-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (finding "extraordinary and compelling reasons" to grant compassionate release where defendant suffered from a comorbidity and was at a higher risk of developing complications from COVID-19); United States v. Muniz, 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (granting defendant's motion for compassionate release where his serious medical conditions, including hypertension, made the defendant "particularly vulnerable to severe illness from COVID-19").

The Government recently decided to release Dunlap to home confinement, but setting the release date as May 22, 2020. (Doc. 149 at 5.) This decision required the BOP to find that Dunlap met the standards for release to home confinement as an "elderly offender." His release plan has also been approved by the BOP. The Government does not dispute that he poses no danger to any person or to the community.

Dunlap cites what he contends is a growing threat of exposure to COVID-19 at his prison facility. He notes that as of April 15, 2020, there were 46 infected inmates and 27 infected staff at FCI

6

Butner Medium I. (Doc. 159 at 13 (citing www.bop.gov/coronavirus (last accessed Apr. 15, 2020, at 9:17 a.m.).) The first death of one of these inmates occurred on April 11, 2020, id. (citing Inmate Death at FCI Butner I, U.S. Department of Justice Federal Bureau of Prisons, (Apr. 12, 2020), https://www.bop.gov/resources/news/pdfs/20200412_press_release_inmate_death_but_covid19.pdf), and by April 14, 2020, there were three more inmate deaths, id. (citing Jonas Pope IV, Three More Inmates from Butner Federal Prison Die from Coronavirus Outbreak, The News and Observer, Apr. 13, 2020, https://www.newsobserver.com/news/coronavirus/article241980316.html). The Government opposes release on the ground that Dunlap is being protected because he has been removed from the general population at Butner and quarantined with other inmates awaiting release to home confinement where, according to the Government, proper protections and safeguards have been put in place to protect him from contracting COVID-19. (Doc. 161 at 16-17.) However, since the Government's brief was filed only days ago, the BOP reports two-thirds of those inmates with whom Dunlap has been quarantined have themselves tested positive for COVID-19. Of the 46 inmates with whom Dunlap was quarantined from the general prison population, 31 inmates tested positive and had to be removed for treatment and care. After that, an additional remaining inmate within Dunlap's quarantined group of 15 inmates showed symptoms of

7

COVID-19 and has been removed from his group. Thus, the threat of COVID-19 to Dunlap specifically is significant. Given his advanced age, health, and hypertension comorbidity for COVID-19, and given the presence of COVID-19 not only in the general population but more specifically within Dunlap's very small home confinement quarantine population at Butner, the court finds that Dunlap has demonstrated extraordinary and compelling reasons that warrant a sentence reduction.

Finally, the court must consider the relevant sentencing factors to determine a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). These are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines] . . . ;

(5) any pertinent policy statement . . . by the Sentencing Commission . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Id.

The court finds that the applicable § 3553(a) factors favor a reduction in Dunlap's sentence. While Dunlap's financial crimes were serious, resulting in a sentence of 324 months, the court concludes that Dunlap his term of 18 years is sufficient, but not greater the necessary, to meet the purposes of sentencing under the circumstances, including those of just punishment, seriousness of the offenses, and deterrence. Moreover, there is no evidence that Dunlap poses any danger to the community. The court can also consider his post-sentencing conduct. Pepper v. United States, 562 U.S. 476, 490-93 (2011). Dunlap has participated in or taught over 30 educational courses, held a job within the BOP, incurred no infractions, and otherwise been a model prisoner. See United States v. Davis, PJM 00-424-2, 2020 WL 1083158, at *2 (D. Md. Mar. 5, 2020) (granting compassionate release where 79-year-old defendant had serious deterioration of his physical health, undergone three prostate surgeries, and had no disciplinary

9

infractions during his 19 years of incarceration).  Further, in light of BOP's existing decision to release Dunlap to home confinement in a matter of days, the court's ability to supervise Dunlap for the three years of his release, especially given Dunlap's advanced age of 77 years old, will serve as an adequate safeguard for deterrence and protection of the community.

The court does not doubt that BOP is endeavoring to take all necessary precautions to protect the health and safety of those in its custody, but given these unique circumstances, the court finds that Dunlap's immediate release is warranted.  For the reasons stated above, therefore,

IT IS ORDERED that Dunlap's motion for compassionate release (Doc. 152) is GRANTED, his sentence is reduced to time served, and he shall be released forthwith from the custody of the Bureau of Prisons to his approved residence in Guilford County, North Carolina, subject to the terms of supervised release set out in his Judgment (Doc. 85), as revised by the November 2016 revisions to the mandatory and standard conditions of supervision.  Because the release plan has been approved by the United States Probation Office, there is no need to stay this aspect of the court's decision.

IT IS FURTHER ORDERED that Dunlap's motion to seal (Doc. 155) is DENIED, as he has put his medical condition at issue in the case, and that the sealed documents be unsealed; provided, however,

10

that the denial is STAYED for seven days and is without prejudice to Dunlap's withdrawal of the sealed documents filed with the court and refiling same for public view with redactions of only personal identifiers (such as birthdate, social security number, etc.) so as to protect such information not relevant to the court's decision.

                                                   /s/   Thomas D. Schroeder
                                            United States District Judge

April 29, 2020

11

Case 1:02-cr-00165-TDS   Document 163   Filed 04/29/20   Page 11 of 11